```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                          CHARLESTON


WILLIAM A. LaRUE,

        Plaintiff,

v.                                    Case No. 2:08-cv-01450

CPL. DAVID TONEY,
CPL. NATE KENDRICK,
CO II DAVID MILLER,

        Defendants.
```

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are Plaintiff's Motion for Summary Judgment (docket sheet document # 77) and Defendant's Motion for Summary Judgment (# 125). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On January 5, 2009, Plaintiff filed an Amended Complaint under 42 U.S.C. § 1983, alleging that the defendants David Toney, Nate Kendrick and David Miller, all correctional officers at the Mount Olive Correctional Complex, administered a beating on Plaintiff on December 5, 2008, as punishment for Plaintiff's having photographs

of children in his cell. (# 13 at 2-3). Plaintiff further alleges that this beating was made with malicious and sadistic intent, for the purpose of causing harm, and constituted cruel and unusual punishment, in violation of his Eighth Amendment rights. (Id. at 5-6). Plaintiff seeks declaratory and injunctive relief, as well as monetary damages from the defendants. (Id. at 7). While this case has been pending, Plaintiff has filed numerous other documents in support of his Amended Complaint, which the undersigned will discuss as necessary.

On March 25, 2009, Plaintiff filed a second Motion for Summary Judgment[1] (# 77), with accompanying exhibits consisting of photographs of his alleged injuries, diagrams of his cell where the alleged beating took place, a Declaration concerning the defendants' responses to discovery requests made by Plaintiff, and an affidavit from Plaintiff.

On April 2, 2009, the defendants filed a Response to Plaintiff's Second Motion for Summary Judgment, asserting that there were genuine issues of material fact remaining in dispute, that the defendants denied beating Plaintiff,[2] and that Plaintiff had produced no affirmative evidence to support his claim. (# 89).

---

[1] The undersigned previously denied, without prejudice, a Motion for Summary Judgment filed by Plaintiff as being premature. (# 51).

[2] The undersigned notes, however, that there is no sworn testimony or other evidence before the court from the defendants themselves.

On June 18, 2009, after a period of time for discovery, the defendants filed a Motion for Summary Judgment, with accompanying exhibits (# 125), and a Memorandum of Law (# 126). Plaintiff had previously been advised, pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his right and opportunity to file a response, with counter-affidavits or other appropriate materials, to any motion for summary judgment filed by the defendants. (# 51).

Thereafter, Plaintiff filed additional documents in support of his Motion for Summary Judgment and opposing the defendants' Motion for Summary Judgment (## 127, 132, 134-136).

**PLAINTIFF'S FACTUAL CONTENTIONS AND MOTION FOR SUMMARY JUDGMENT**

During his deposition, Plaintiff testified that on December 5, 2008, the defendant officers came to his cell to conduct a strip search, during which photographs of children and documents containing forged signatures of West Virginia Division of Corrections employees were found. Plaintiff maintains that he was compliant throughout the search process, despite alleged threats from the defendants, who also allegedly made derogatory and degrading comments to Plaintiff, such as "You baby-raping whore. You sick fuck. You know I ought to beat your brains in." (# 125, Ex. A at 28, 31). Plaintiff further contends that, at the conclusion of the search, the defendants left him in his cell for a period of time, but returned sometime later to beat him up.

During his deposition, Plaintiff further testified that he was sitting on his bed when these three officers returned to his cell and signaled for the tower officer to open the cell door. Plaintiff states that, when the officers entered the cell, he was raising his hand up to receive an S-1 property confiscation receipt from defendant Miller, when defendant Kendrick began punching him in the stomach. Plaintiff further testified that defendant Miller punched him in the ribs, and that defendant Kendrick also punched him in the jaw. Plaintiff did not testify that defendant Toney made any physical contact with him, but stated that he was being belligerent. (Id. at 35-38). Plaintiff testified as follows about defendant Toney:

> He said, "Do you know what we could do? Do you know what I should do?" He said, "Do you remember what I told you if I found one -- any more pictures?" I'm like, "Yeah, that you would smash my brains in." He said, "Well, I ought to do just that."

(Id. at 36).

During his deposition, Plaintiff described his injuries from the alleged beating. He stated that, after the incident, he was "having a hard time opening his mouth to even eat for two or three days" because he had been punched in his right jaw. (Id. at 56). He stated that he had a sore on his nose from his glasses, which he states were smacked off of his face. (Id.) He said he had rib and back pain, that his left ribs were green, and that he could hardly breathe. (Id.) Plaintiff also testified that he had bruising on

4

his ears.

Plaintiff was seen by a nurse in the medical unit on December 8, 2008. He stated that, at that time, he complained of being in pain, particularly when he breathed deeply. Plaintiff stated that no x-rays were taken, but he was given pain reliever. Plaintiff testified that his only lingering issue is an occasional coursing pain down his legs if he sits or lays down for too long. (Id. at 60).

## THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants' Memorandum of Law in support of their Motion for Summary Judgment challenges Plaintiff's credibility based upon his convictions for forgery and uttering, and further asserting that Plaintiff admitted in his deposition to making false statements in pleadings filed in another proceeding. (# 126 at 2-3). The defendants' Memorandum of Law further asserts that Plaintiff has failed to present any evidence to support his allegations that he sustained a beating on December 5, 2008.

Although the defendants' Memorandum of Law denies that the defendants assaulted Plaintiff, the defendants further assert that, based upon Plaintiff's own testimony, he suffered only *de minimus* injury. (Id. at 7-10). The defendants cite to Plaintiff's deposition, in which Plaintiff testified that "it really wasn't no powerhouse punch. It was just like a -- like a fly irritating you. It was just irritating. That's all it was. It was just

5

irritating." (# 125, Ex. A at 37). The defendants' Memorandum of Law further states:

> On December 6 [sic; 8], 2008, Inmate LaRue was taken to the on-site medical office at the Mount Olive Correctional Complex for evaluation of his alleged injuries. *See Exhibit A, page 57, lines 9-11. Exhibit D, Affidavit of Lt. Hill; Exhibit E, Affidavit of Lt. McKinney; Exhibit F, Deposition of Kelly Foster, LPN, page 5, lines 13-24.* At the request of Investigator Frame, Inmate LaRue was escorted to the on-site medical office at the Mount Olive Correctional Complex by Lt. Hill and Lt. McKinney to be evaluated by medical staff. In addition, this evaluation included an inspection for evidence of a beating so that images could be made of the same. *See Exhibits D & E.*
>
> Lt. McKinney instructed Inmate LaRue to strip to his boxer shorts so that he, Lt. Hill and LPN Foster could make a visual inspection of Inmate LaRue's body looking for evidence of injury. Lt. McKinney took photographs of Inmate LaRue's body that depict one small bruise to the bridge of his nose in and about the area where a nose-pad to his glasses would rest. *See Photographs attached to Exhibit E.* After viewing Inmate LaRue's disrobed body, both Lt. Hill and Lt. McKinney were of the opinion that Inmate LaRue had not been involved in any physical altercation in the days prior to December 8, 2008. *See Exhibits D & E.* During deposition, Kelly Foster, LPN, testified that, based upon her evaluation of Inmate LaRue on December 8, 2008, she did not believe Inmate LaRue was involved in a beating on December 5, 2008. *See Exhibit F, page 10, lines 8-10.*
>
> Despite Inmate LaRue's self-serving testimony that he suffered injuries in the alleged assault of December 5, 2008, Inmate LaRue has failed to produce any medical evidence to support his claimed injuries. In fact, Inmate LaRue concedes that medical images made of his ribs failed to reveal any injury to his ribs and/or back. *See Exhibit A, page 58-59, lines 22-24, 1-8.* Inmate LaRue testified that no physician has diagnosed him as suffering from any rib or back injury. *Id. at page 60, lines 4-20.*
>
> Inmate LaRue will be unable to produce any graphic or medical evidence to support his claims that he

>     suffered any injury during the alleged beating.  In fact,
>     all graphic and medical evidence indicates that Inmate
>     LaRue was not beaten at all on December 5, 2008.

(# 126 at 6-7).

### **STANDARD OF REVIEW**

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

>     The judgment sought should be rendered if the pleadings,
>     the discovery and disclosure materials on file, and any
>     affidavits, show that there is no genuine issue as to any
>     material fact and that the movant party is entitled to
>     judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## ANALYSIS

A civil rights action filed pursuant to 42 U.S.C. § 1983 has three elements: (1) deprivation of a right secured by the Constitution or other law of the United States, (2) by a person,

(3) acting under color of State law.  Plaintiff alleges that the use of excessive force against him by the defendants, who, as correctional officers at the Mount Olive Correctional Complex, were "persons acting under color of State law," deprived him of his right to be free of cruel and unusual punishment, secured by the Eighth Amendment to the Constitution.

In Hudson v. McMillan, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6.  The majority opinion noted that "[t]he objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'"  503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.  Such a result would have been as unacceptable to the drafters of the Eighth

9

>     Amendment as it is today. * * *
>
>     That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.] The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

<u>Id.</u>, at 9-10. Near the conclusion of the opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment." <u>Id.</u>, at 11.

Included as Exhibit F to Plaintiff's Motion for Summary Judgment is a document entitled "Plaintiff's Declaration in Support of Summary Judgment" which contains excerpts from what is purported to be the defendants' responses to discovery requests made by Plaintiff during the discovery period.[3] According to these discovery responses, each of the three defendants has admitted that Plaintiff was not acting out or being unruly when they returned to his unit, that Plaintiff was sitting on his bed, that the defendant officers could have handed Plaintiff his S-1 property receipt through the door crack, and that the circumstances following the

---

[3] Plaintiff has hand-written these excerpts. The court is not in possession of a copy of the defendants' actual discovery responses.

10

strip search of Plaintiff's cell did not warrant re-entry into Plaintiff's cell. (# 77, Ex. E). Defendant Kendrick also affirmatively stated that he did not re-enter Plaintiff's cell at that time. (Id. at 4).

Under the Rule 56 standard for consideration of summary judgment motions, this court may not make credibility determinations or resolve factual disputes. Therefore, the defendants' arguments concerning Plaintiff's credibility are not appropriate at this stage of this case. Furthermore, Plaintiff has provided evidence of admissions by the defendants that re-entry into Plaintiff's cell was not necessary or warranted, and that Plaintiff was not acting out in any way that would have necessitated the force allegedly used in order to maintain order or safety at the facility.

The Hudson and Whitley cases cited above demonstrate that, despite the level of injury, "contemporary standards of decency" are "always violated" where a Plaintiff can demonstrate that the force was maliciously and sadistically used to cause harm. Therefore, the defendants' argument that Plaintiff suffered only *de minimus* injury is not dispositive of this case either.

As noted by Plaintiff, the record before this court contains no testimony or other statements under oath from the individual defendants concerning the force allegedly used. Plaintiff has presented evidence, that if proven, supports a finding that the

11

force used against him was used maliciously and sadistically to cause harm, and that it was not applied in a good-faith effort to maintain or restore discipline.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is a genuine issue of material fact concerning the amount and purpose of force, if any, allegedly used against Plaintiff by these defendants and, consequently, neither Plaintiff, nor the defendants, are entitled to judgment as a matter of law.

For these reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** both Plaintiff's Motion for Summary Judgment (# 77) and the defendants' Motion for Summary Judgment (# 125).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the

presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Synder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to transmit it to counsel of record.

    January 25, 2010
           Date

Mary E. Stanley
United States Magistrate Judge

13